## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| DONGGUAN HATCH OPTICAL TECHNOLOGY CO., LTD. ) ) ) | |
| Plaintiff, ) ) | Civil Action No: |
| v. ) ) | |
| INTERCO RECYCLER TRADING LLC, a Florida limited liability company, ) ) ) ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, Dongguan HATCH Optical Technology Co., Ltd. ("Plaintiff"), by and through its attorneys, for its Complaint against Defendant Interco Recycler Trading LLC ("Defendant") alleges the following:

## NATURE OF THE ACTION

1.   Defendant has wrongfully and/or fraudulently taken almost $2,000,000 from Plaintiff as the result of a wire transfer fraud perpetrated against Plaintiff. Despite knowing that it was not the intended recipient of the two subject wire transfers and that it was not entitled to receive those funds, Defendant has kept the money. Plaintiff now brings this action seeking a return of its $2,000,000.

2.    Plaintiff began receiving emails from someone posing as an employee of Plaintiff's vendor in December 2022. The imposter claimed that the vendor had changed its account to a new bank with a new account number, and asked Hatch to update its records. Subsequently, and after multiple emails between Plaintiff and the imposter, Plaintiff transferred $610,142.75 to the new account on January 3, 2023, believing that the payment would resolve an outstanding invoice with its vendor. On February 1, 2023, Plaintiff then transferred another $1,376,073.29, again believing that the payment would resolve a second outstanding invoice with its vendor.

3.    After the two transfers, Plaintiff believed it had sent $1,986,216.04 to its vendor. When the vendor contacted Plaintiff to ask about the status of the payments, Plaintiff produced copies of the receipts.

4.    But it wasn't until Plaintiff's vendor confirmed that it had not changed its bank or account information, and that it had not received the two payments, that Plaintiff learned that it was the victim of a fraud.

5.    After spending a significant amount of time and resources to investigate the matter, Plaintiff learned that the beneficiary of the account that received the transfers was not Plaintiff's vendor, but a company Plaintiff had never heard of before: Defendant.

6.    Despite having no relationship with Plaintiff whatsoever, and despite knowing (or should know) that it was not entitled to those funds,

2

Defendant has not returned the approximate $2,000,000. At bottom, Plaintiff is the victim of a wire transfer fraud. Defendant was either a participant in that fraud, or, at the very least, has been unjustly enriched as a result of the transfer of almost $2,000,000 to its account. Either way, Defendant should be compelled to return the money that it has no right to retain.

7.     Plaintiff has suffered damages of more than $2,000,000, including, *inter alia*, its attorney fees, costs, and other expenses. Plaintiff now seeks the return of its money and to be made whole after Defendant's wrongful conduct.

## **PARTIES**

8.     Plaintiff is a Chinese corporation, incorporated under the laws of China with a principal place of business at 311 Zehn'an Road, Changan Town, Dongguan City, Guangdong Province, China 523000.

9.     Defendant is a dissolved Florida limited liability company with a principal place of business at 4607 Lazdowski Way, The Villages, Florida 32163. Defendant's sole member is Barbara A. Myles a/k/a Barbara Anne Myles, who resides at 4607 Lazdowski Way, The Villages, Florida 32163. On or about September 23, 2022, Defendant filed Articles of Organization with the Florida Secretary of State. A true and accurate copy of the Articles of Organization is attached as <u>Exhibit 1</u>. Defendant filed Articles of Dissolution on March 16, 2023, stating that it was no longer conducting business. A true and accurate copy of the Articles of Dissolution is attached as <u>Exhibit 2</u>. Under

Florida law, Defendant may still be named as a party to this action even though the company is dissolved.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship existing between the adverse parties and the amount in controversy, exclusive of interest and costs, exceeds the jurisdictional sum of $75,000.00.

11.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACT ALLEGATIONS

12.    Plaintiff has had a business relationship with Corning Specialty Materials Incorporated ("Corning") for many years.   As part of this relationship, Plaintiff purchases supplies from Corning from time to time.

13.     As per Plaintiff's pattern and practice, after receiving an invoice from Corning, Plaintiff transfers money from its account at China Minsheng Bank to pay those invoices.

14.    On December 2, 2022, Plaintiff received an email from a Corning employee, Nancy Lv, providing the details of a shipment from November 2022, including an invoice.

4

15.     On December 9, 2022, Plaintiff received an email purporting to be from Ms. Lv, but who turned out to be a third party perpetrator, stating that Corning had to change its bank and account due to an ongoing audit and review of taxes that allegedly was preventing Corning from receiving money at its old banking institution, which was JP Morgan Chase Bank, N.A.

16.     Instead, the third party perpetrator requested that any future payments be sent to the following account:

Corning Specialty Materials Inc
TRUIST BANK
W central FL - Lake Deaton
Plaza 750 Kristen Way the Villages, FL 321630230.
Acct # *********6414
AA Routing # *****1387
SWIFT ****US33 XXX

17.     Because the email requested that Plaintiff change the banking account information to the Truist Bank account, Plaintiff requested a sealed change letter.

18.     On December 13, 2022, Plaintiff received an email from the third party perpetrator providing the requested document and stating that it was an official document, even though it did not have a seal.  The third party perpetrator stated that the account change letter would not have a seal because it is a United States company.

19.     After multiple follow up emails, Plaintiff eventually submitted a wire transfer request to its bank on December 30, 2022, asking that the

5

payment be sent to the Truist Bank account, believing that it was Corning's bank account.

20.     Plaintiff's bank issued the first wire transfer on or about January 6, 2023 in the amount of $610,142.75, which Plaintiff thought was going to Corning at the Truist Bank account.

21.     On February 1, 2023, Plaintiff's bank issued the second wire transfer in the amount of $1,376,073.29, which Plaintiff also thought was going to Corning at the Truist Bank account.

22.     Subsequently, Corning contacted Plaintiff to inquire as to the status of the payment relating to the outstanding invoices.

23.     Plaintiff provided Corning with the receipts for the payments to the Truist Bank.

24.     On February 24, 2023, though, Corning confirmed that Plaintiff was the victim of a cyber incident, as the email correspondence requesting a change to the bank account information did not actually come from Corning.

25.     Plaintiff immediately contacted the relevant law enforcement agencies, including the Chinese police and the FBI to notify them of the fraud.

26.     Plaintiff also contacted all the banks involved in this transaction, including China Minsheng Bank (which initiated the payment), Wells Fargo Bank, N.A. (which was the intermediary bank), and Truist Bank (which ultimately received the funds).

134289049v.1

27.    Through its investigation, Plaintiff learned that the beneficiary of the account provided by the third party perpetrator was not Corning, as Plaintiff believed, but was Defendant.

28.    This fact was not apparent to Plaintiff, which is evident on its Application of Funds Transfers that it provided to China Minsheng Bank to begin the transfers.  Instead, on those applications, Plaintiff explicitly stated that the entity who should receive the funds (i.e. the Beneficiary) was Corning.

29.    On March 23, 2023, Truist Bank confirmed that it had "taken the appropriate actions against [the] account based on the reported fraud," although it would not provide any additional account details.

30.    Notably, though, Defendant filed Articles of Dissolution on March 16, 2023, stating that it was no longer conducting business.

31.    To date, Plaintiff has not received a return of the almost $2,000,000 that was sent to Defendant's account at Truist Bank.

## FIRST COUNT
### Fraud

Plaintiff re-alleges and incorporates by reference the allegations contained in the Paragraphs One through Thirty-One as if fully set forth herein.

32.    Upon information and belief, Defendant engaged in, or facilitated, an email fraud scheme that defrauded Plaintiff out of almost $2,000,000.  In

7

particular, upon information and belief, Defendant or its agent hacked or spoofed the email account of a Corning employee and/or impersonated that Corning employee.

33.     Upon information and belief, and in furtherance of its fraudulent scheme, Defendant, or its agent, told Plaintiff that it should send payment for the invoices owed to Corning to the Truist Bank account.

34.     Upon information and belief, Defendant, or its agent, represented that Plaintiff would be making a payment to Corning by sending the payment to the Truist Bank account.

35.     Defendant, or its agent, knew that this representation was false.

36.     In fact, Defendant, or its agent, knew that if Plaintiff sent a wire transfer to the Truist Bank account, that Plaintiff would be paying Defendant and not Corning.

37.     Upon    information    and    belief,    Defendant    made    false representations to Plaintiff that would induce Plaintiff to pay the amount on the invoices to Defendant at the Truist Bank account, and not Corning.

38.     Plaintiff relied on these false representations and, to its detriment, paying almost $2,000,000 to Defendant, which was actually due and owed to Corning.

39.     Plaintiff still owes, or has paid, $1,986,216.04 to Corning as the January 6, 2023 and February 1, 2023 payments were not received by Corning.

8

40.   As a result, Plaintiff has suffered damages in an amount to be determined at trial, but no less than $1,986,216.04.

## SECOND COUNT
### Unjust Enrichment

Plaintiff re-alleges and incorporates by reference the allegations contained in  Paragraphs One through Thirty-One as if fully set forth herein.

41.   On or about January 6, 2023, Plaintiff's bank sent a wire transfer in the amount of $610,142.75, which Plaintiff thought was being sent to Corning at the Truist Bank account.

42.   On or about February 1, 2023, Plaintiff's bank issued the second wire transfer in the amount of $1,376,073.29, which Plaintiff also thought was being sent to Corning at the Truist Bank account.

43.   Both of the wire transfers were not received by Corning, but the money was instead placed in Defendant's bank account at Truist Bank.

44.   As a result of the two wire transfers, Defendant received almost $2,000,000 from Plaintiff.

45.   Defendant had knowledge of the two wire transfers, as the money went into its bank account at Truist Bank.

46.   Defendant knew, or should have known, that Plaintiff did not owe Defendant any money, as Defendant did not have any relationship with

Plaintiff that would result in an almost $2,000,000 payment from Plaintiff to Defendant.

47.     Defendant knew, or should have known, that it was not entitled to receive almost $2,000,000 from Plaintiff.

48.     As a result, Defendant has unjustly benefited by receiving payment for services, goods, and/or expenses that it did not in fact provide, to Plaintiff's detriment.

49.     As a result, Plaintiff has suffered damages in an amount to be determined at trial, but no less than $1,986,216.04.

**THIRD COUNT**
**Conversion**

Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs One through Thirty-Six of Count One and Paragraphs Forty-One through Forty-Seven of Count Two as if fully set forth herein.

50.     Under the impression that Plaintiff was paying Corning for legitimate services and goods, Plaintiff paid Defendant a total of $1,986,216.04.

51.     By engaging in the email fraud scheme, Defendant has converted total of $1,986,216.04 from Plaintiff.

134289049v.1

52.    Defendant assumed and exercised ownership and control over the total of $1,986,216.04 received from Plaintiff, to the exclusion of Plaintiff, which is inconsistent with Plaintiff's right of possession.

53.    As a result, Plaintiff has suffered damages in an amount to be determined at trial, but no less than $1,986,216.04.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands that this Honorable Court award:

1.    Compensatory damages;

2.    Treble damages where applicable;

3.    Attorney's fees and costs where applicable;

4.    Pre-judgment and post-judgment interest to the extent permitted by law; and

5.    Any other relief this Court may deem appropriate.

Dated:  August 11, 2023            **LOCKE LORD LLP**
777 South Flagler Drive
Suite 215 East Tower
West Palm Beach, FL  33401
Telephone:  561-833-7700
Facsimile:   561-655-8719

*/s/  Ernst Pirre-Louis*
Ernst Pirre-Louis
Florida Bar No. 1044892
ernst.pirre-louis@lockelord.com

Tara L. Trifon (pro hac vice forthcoming)
**LOCKE LORD LLP**
20 Church Street, 20th Floor

11

Hartford, CT  06103
Telephone:  860.541.7740
Facsimile:  860.527.4198
tara.trifon@lockelord.com

*Attorneys for Plaintiff Dongguan HATCH Optical Technology Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2023 a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing as indicated below.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/  Ernst Pirre-Louis*
Ernst Pirre-Louis

12

134289049v.1